UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Mack Allen Davis, | ) | C/A No. 8:25-cv-02548-JDA-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Madisen, *Housing Officer*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court in this case is Defendant Deklen Madsen's ("Defendant" or "Madsen")[1] Motion for Summary Judgment. ECF No. 46. Proceeding *pro se* and *in forma pauperis*, Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.[2] When Plaintiff commenced this action, he was a pretrial detainee incarcerated at the J. Reuben Long Detention Center ("the Detention Center"), and he complains about events that occurred there. ECF No. 1 at 2, 5. In November 2025, Plaintiff advised the Court that he had been transferred, after being convicted in the state courts, to the Kirkland Reception and Observation Center ("Kirkland"), where he remains incarcerated at this time. ECF No. 57. Pursuant to 28 U.S.C. § 636(b), and Local Civil Rule 73.02(B) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases filed under

---

[1] Defendant notes that Plaintiff incorrectly identified Defendant as "Madisen." ECF No. 46 at 1. Plaintiff acknowledges that "Madisen" is misspelled and Defendant is correctly identified as "Deklan Madsen." ECF No. 65 at 1.

[2] Plaintiff's Complaint named the following Defendants: Madsen, Ofc. Long ("Long"), Lt. Shomp ("Shomp"), Ofc. Reyes ("Reyes"), Cianciolo, Williams, Nurse Practitioner Jenifer ("Jenifer"), Beth Lawson ("Lawson"), and Dr. Steve Garman ("Garman"). ECF No. 1. By Order dated November 17, 2025, Defendants Long, Shomp, Reyes, Cianciolo, Williams, Jennifer, Lawson, and Garmon were all dismissed from this action. ECF No. 66 (adopting the Report and Recommendation at ECF No. 23).

1

§ 1983 and make recommendations to the district court.  For the reasons below, Defendant's Motion for Summary Judgment should be granted.

## BACKGROUND

**Procedural History**

Plaintiff commenced this action by filing a Complaint on the standard form seeking relief pursuant to 42 U.S.C. § 1983.  ECF No. 1.  On August 15, 2025, Defendant filed an Answer to the Complaint.  ECF No. 28.

On October 20, 2025, Defendant filed a Motion for Summary Judgment.  ECF No. 46.  On October 21, 2025, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (a "*Roseboro* Order"), advising Plaintiff of the motion for summary judgment procedures and the possible consequences if he failed to respond adequately.  ECF No. 49.  On November 14, 2025, Plaintiff filed a first Response in Opposition to the Motion for Summary Judgment.  ECF No. 65.  Defendant filed a Reply on November 21, 2025.  ECF No. 69.  On December 29, 2025, Plaintiff filed a second Response in Opposition to the Motion for Summary Judgment.[3]  ECF No. 79.

**Factual Allegations[4]**

Plaintiff makes the following pertinent allegations in the Complaint.  ECF No. 1.  Plaintiff brings this action for the alleged deprivation of his rights because he was subjected to cruel and harsh treatment, refused medical treatment, subjected to excessive force, and subjected to

---

[3] Defendant filed a Motion to Strike Plaintiff's second Response.  ECF No. 81.  The Court has separately addressed that Motion, declining to strike Plaintiff's second Response, which is addressed below.  *See* ECF No. 90.

[4] The Court does not include Plaintiff's allegations against the Defendants who have been dismissed from this action.

deliberate indifference to serious medical needs. *Id.* at 5. According to Plaintiff, he was "injured by [Madsen] when he snatched [Plaintiff's] hair backward spraining [his] neck." *Id.* Specifically, Madsen used excessive force during a pat down search by snatching Plaintiff's head back by the hair. *Id.* at 8, 14–15. For his injuries, Plaintiff alleges as follows, verbatim:

> [Madsen] brought injuries to my neck and shoulder. Medical refused to treat it and I didn't receive medical help. My neck continues to hurt. I have a bullet in my neck and Ofc. [Madsen] snatched head backwards and pulled sprain [sic] muscle that continues to hurt and I lost massive mobility in my arm movements. Nurses medical staff refuses treatment. It [sic] written in grievance and medical requests for treatment.

*Id.* at 17. For his relief, Plaintiff seeks money damages. *Id.* at 17–18.

**Plaintiff's Other Federal Court Cases**[5]

This is one of four actions filed by Plaintiff in this Court within the span of several months,[6] with many of the claims in the cases related to the same or similar underlying incidents that allegedly occurred at the Detention Center. In September 2024, Plaintiff filed an action—at case number 24-cv-5429—pursuant to § 1983 against various corrections officers at the Detention Center asserting claims of excessive force and denial of medical care. That action was dismissed on September 26, 2025, when the Court granted summary judgment for the defendants.

---

[5] The Court may take judicial notice of Plaintiff's other cases filed in this Court. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'"). The Court briefly notes these cases as Plaintiff has repeatedly referenced his other cases in his filings in this case, and many of his motions and other filings also contain the case numbers of the other cases.

[6] Plaintiff has also filed numerous other cases in this Court dating back to the 1990s. *See, e.g.*, *Davis v. Moore*, C/A No. 6:95-cv-1994; *Davis v. Ward*, C/A No. 6:95-cv-2017; *Davis v. Boyd*, C/A No. 8:22-cv-1769.

In October 2024, Plaintiff filed an action—at case number 24-cv-5970—pursuant to § 1983 against various Detention Center officials and other state and local officials asserting claims related to his medical care and treatment as well as his pending charges in the state courts. That action was dismissed on initial review for failing to state a claim.

In March 2025, Plaintiff filed an action—at case number 25-cv-2550—pursuant to § 1983 against various officials, including many of the same Detention Center officers named in the present action, asserting claims related to his treatment and the conditions of confinement at the Detention Center. That action was dismissed on initial review for failing to state a claim.

In March 2025, Plaintiff filed the present action—at case number 25-cv-2548—pursuant to § 1983 against certain Detention Center officers, asserting claims of excessive force and denial of medical care.

## STANDARD OF REVIEW

**Liberal Construction of *Pro Se* Pleadings**

Because Plaintiff is a *pro se* litigant, his pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the *pro se* pleading remains subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the Court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), construct Plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The Court's duty to liberally construe a *pro se*

litigant's complaint does not require the Court "to remove [it's] heavy robe . . . and take on the role of the litigant's attorney." *Jackson v. Dameron*, -- F. 4th --, No. 25-6295, 2026 WL 860089, at *7 (4th Cir. Mar. 30, 2026). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment

5

motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Claims under § 1983**

The Complaint is filed pursuant to § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color

of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

**Claims Under the Fourteenth Amendment**

A pretrial detainee cannot be subject to any form of "punishment." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). As such, a pretrial detainee's claims for deliberate indifference and excessive use of force, such as the claims asserted in this case, are brought pursuant to the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's prohibition on cruel and unusual punishment. *Id*. Although Plaintiff's claims are analyzed under the Fourteenth Amendment, case law interpreting the standard of deliberate indifference under the Eighth Amendment is instructive. *See Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (noting that courts "traditionally apply Eighth Amendment deliberate indifference precedents" to Fourteenth Amendment claims). "The constitutional protections guaranteed to a pretrial detainee under the Fourteenth Amendment 'are co-extensive with those provided to convicted prisoners by the Eighth Amendment.'" *Kovari v. Brevard Extraditions, LLC*, 461 F. Supp. 3d 353, 381 (W.D. Va. 2020) (citation omitted); *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (noting a pretrial detainee can establish a violation under the Fourteenth Amendment where "he shows deliberate indifference to serious medical needs" under cases interpreting the Eighth Amendment).

In *Short v. Hartman*, the United States Court of Appeals for the Fourth Circuit noted that the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015), had abrogated the Fourth Circuit's prior precedent requiring the application of the subjective element of the Eighth Amendment test to a pretrial detainee's claims under the Fourteenth Amendment and held that a pretrial detainee's claims must be evaluated under an entirely objective standard. 87 F.4th 593, 611–12 (4th Cir. 2023).

7

**Deliberate Indifference**

A pretrial detainee's claim for deliberate indifference to a serious medical need is properly brought under the Fourteenth Amendment. *Moss*, 19 F.4th at 624. To establish this claim, a pretrial detainee must show that (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed. *Short*, 87 F.4th at 611. A condition is a serious medical need if it is "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

In holding that a pretrial detainee is no longer required to show subjective knowledge of an excessive risk of harm, the Fourth Circuit stated as follows:

> The objective test we adopt today differs from our prior subjective test in one respect only. The plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm. That showing remains sufficient, but it is no longer necessary. Now, it is sufficient that the plaintiff show that the defendant's action or inaction was "objectively unreasonable," that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly. Or as the Supreme Court put it when describing civil recklessness in *Farmer*, it is enough that the plaintiff show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." We go no further.
>
> To be clear, it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee. Negligence was not enough before, and it is not enough now.

*Short*, 87 F.4th at 611–12 (internal citations omitted).

**Excessive Use of Force**

To state a claim of excessive force in violation of his Fourteenth Amendment rights as a pre-trial detainee, a plaintiff may prevail upon evidence that "the use of force is deliberate – *i.e.*, purposeful or knowing." *Kingsley*, 576 U.S. at 395. A plaintiff's claim need not detail a subjective element of his alleged assailant's subjective state of mind but "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97. Objective reasonableness turns on the "facts and circumstances of each particular case." *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). To determine if the force used was reasonable, the following factors may be considered: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting" (the "*Kingsley* factors"). *Kingsley*, 576 U.S. at 397.

## DISCUSSION

**The Parties' Positions**

Defendant argues he is entitled to summary judgment because Plaintiff's claim of excessive force in violation of the Fourteenth Amendment fails as a matter of law for the following reasons. ECF No. 46 at 2. First, Madsen did not use any force, and his actions in conducting a pat down search were constitutionally permissible. *Id*. at 6–9. Second, Plaintiff's claims against Madsen in his official capacity are barred by the Eleventh Amendment. *Id*. at 9–11. Third, Madsen is entitled to qualified immunity as to Plaintiff's claims against him in his individual capacity. *Id*. at 11–12. Fourth, Plaintiff failed to exhaust his administrative remedies. *Id*. at 12–14.

9

Plaintiff argues as follows in his first Response in Opposition. ECF No. 65. According to Plaintiff,

> Madsen admitted to snatching Plaintiff[’s] hair and head backwards. On flash drive, Ofc. Madsen never touched Plaintiff[’s] head or hair while leaving out [of] the pod. Defendant is clear about he touched the Plaintiff wrongfully in his Affidavit and it’s clear to facts in Affidavit that Plaintiff was intense about the treatment given by Ofc. Deklan Madsen as soon as the incident.

*Id*. at 1. According to Plaintiff, Madsen was working the "pill call" and knew Plaintiff was receiving medication for an existing neck and back injury. *Id*. at 2. Even though Madsen "was well aware [of] Plaintiff's injury," he "intentionally snatched [Plaintiff's] neck and head backwards while pulling his hair." *Id*. Plaintiff asserts that Madsen's conduct constituted an excessive use of force in violation of the Fourteenth Amendment. *Id*. Plaintiff asserts that Madsen's Affidavit "speaks of Plaintiff in a negative light" even though the issue in this case is about Madsen's conduct. *Id*. at 3. Plaintiff also contends that Madsen manipulated Plaintiff's grievances in the kiosk. *Id*. According to Plaintiff, he spoke verbally to "Capt. Jermigan and Major Stafford which concluded the grievance procedure." *Id*. Plaintiff also asserts that the "grievance procedure changes often." *Id*.

In his second Response in Opposition, Plaintiff argues as follows.[7] ECF No. 79. Plaintiff reiterates his belief that Defendant, along with others at the Detention Center, are "manipulating" the grievance process. *Id*. at 2. Plaintiff baldly asserts that Defendant's attorneys have committed "perjury and continue to add persons that has nothing to do with Madsen hair pulling." *Id*. Plaintiff

---

[7] Plaintiff's second Response includes various arguments and assertions that have nothing to do with the Motion for Summary Judgment or the claims asserted in the Complaint. For example, Plaintiff complains that he "has received an unfair sentence charge and trial held illegally by General Session Judge Culbertson who continue to dismiss motions . . ." ECF No. 79 at 1. The Court does not consider Plaintiff's arguments as to these unrelated matters that have nothing to do with the claims asserted in this case.

also complains that he has been denied his Sixth Amendment right to counsel because he is now at Kirkland and cannot adequately respond to the Motion for Summary Judgment as he does not have access to a law library.[8]  *Id.*

**The Undisputed Record Evidence**

In support of the Motion for Summary Judgment, Defendant filed the Affidavits of Madsen (the "Madsen Affidavit") (ECF No. 46-1), Kaleb Barfield (the "Barfield Affidavit") (ECF No. 46-2), and Lisa Piccone (the "Piccone Affidavit") (ECF No. 46-4), along with relevant exhibits to each Affidavit.  Defendant has also filed Plaintiff's grievances and related incident reports for the events occurring on February 21, 2025 (ECF No. 46-3) as well as video of the alleged use-of-force incident (ECF No. 46-5).  Plaintiff has not filed or identified any evidence or documents in support of his Opposition to Defendants' Motion.

Madsen provides the following statements in his Affidavit.  ECF No. 46-1.  Madsen has been employed with the Horry County Sheriff's Office ("HCSO") since October 2024 as a detention officer at the Detention Center, where his duties are to maintain security within the housing units.  *Id*. at 2, ¶ 2.  On February 21, 2025, Madsen conducted a pat down search of Plaintiff when he re-entered the B-3 housing unit.  *Id*. at 2, ¶ 3.  Madsen had no prior interactions with Plaintiff.  *Id*. at 2, ¶ 4.  Immediately prior to the pat down search, Plaintiff had re-entered B-3 from another area of the Detention Center.  *Id*. at 3, ¶ 6.  Pat down searches are routine at the

---

[8] Throughout the pendency of this action, Plaintiff has filed seven Motions asking the Court to appoint counsel in this case, and the undersigned has denied all seven Motions.  Plaintiff argues now, as he did in many of his Motions, that he does not have access to a law library at Kirkland where he is presently incarcerated and therefore cannot adequately litigate his case.  That argument lacks merit particularly given that Plaintiff's claims fail—not because he is unable to present a different legal argument—but because as a matter of law his allegations fail to establish his entitlement to relief.  Thus, even if Plaintiff had access to a law library, or the Court were inclined to appoint counsel, it is clear that Plaintiff could not present any argument to survive summary judgment based on the record before the Court as described herein.

Detention Center and are performed in a variety of scenarios for safety and security reasons, including whenever an inmate returns to their housing unit to ensure they are not bringing in any contraband. *Id*. at 3, ¶ 7. When Plaintiff entered the housing unit, Madsen came out from the officer's desk to conduct a pat down search. *Id*. at 3, ¶ 8. Madsen performed the search by starting at Plaintiff's head, using the back of his hands to brush Plaintiff's body down to his legs. *Id*. Because Plaintiff had long hair, Madsen gently brushed his hair with the back of his hands to ensure there were no objects in his hair. *Id*. The entire process took less than ten seconds. *Id*. After Madsen completed the search, Barfield escorted Plaintiff to his cell. *Id*. at 3, ¶ 9. At some point after the search, shift sergeant Jeremy Lauzon ("Lauzon") asked Madsen to write an incident report regarding the incident. *Id*. at 3, ¶ 10. Madsen prepared an incident report. *Id*. at 3, ¶ 11. Additionally, overhead surveillance video captured the incident. *Id*. at 3, ¶¶ 11–12. That video surveillance has been submitted to the Court. Madsen asserts that he did not use excessive force against Plaintiff, that his actions were consistent with training he received and in accordance with HCSO policy and procedures, and that his actions were only those necessary to conduct the required pat down search of Plaintiff. *Id*. at 3, ¶ 13. Madsen contends that he never pulled Plaintiff's hair or otherwise used any excessive force against Plaintiff. *Id*. at 4, ¶ 13.

Attached to Madsen's Affidavit is a copy of his incident report, which provides the following narrative:

> On the above time and date, Inmate Davis was returning to the unit. I began my pat-down search at this uniform collar. I used both hands, starting at the back of his neck, and then moving to the front of his collar. I then began patting down his back with the back of my hands. Then, still using the back of my hand, I searched his sides and arms. I then began searching his stomach and chest with my right arm using the back of my hand. I then patted down both of inmate Davis' legs, one at a time, and told him he was good to head back to his cell.

12

ECF No. 46-1 at 5.

Barfield provides the following statements in his Affidavit. ECF No. 46-2. Barfield has been employed by the HCSO since August 2023 as a detention officer at the Detention Center, where his duties are to maintain security within the housing units. *Id*. at 2, ¶ 2. Barfield is familiar with Plaintiff, "who has a well-known reputation among officers as being an inmate who is frequently a disciplinary problem and prone to violence" and is "known to be unpredictable and to engage in physical altercations." *Id*. at 2, ¶ 4. On the day of the incident, Barfield was in the B-3 housing unit assisting in moving inmates to their cells. *Id*. at 3, ¶ 5. Plaintiff returned to the unit from another location in the Detention Center. *Id*. According to Barfield, "[w]henever an inmate returns to their housing unit, for safety and security reasons, they are required to submit to a brief pat down search of their person to ensure they are not bringing any contraband items into the housing unit." *Id*. at 3, ¶ 6. Madsen was at the officer desk in the housing unit when Plaintiff re-entered and came out from behind the desk to conduct a pat down search of Plaintiff. *Id*. at 3, ¶ 7. Barfield observed the pat down search which "took less than ten seconds and was entirely routine." *Id*. After Madsen completed the search, Barfield escorted Plaintiff to his cell at which time Plaintiff complained that Madsen had pulled his hair. *Id*. at 3, ¶ 8. Barfield did not see Madsen pull Plaintiff's hair or do anything to Plaintiff's hair other than to brush it with his hands. *Id*. Barfield asserts that he "watched the entire process of Ofc. Madsen conducting a pat down search of Plaintiff and saw nothing from Ofc. Madsen that would even be remotely close to excessive force." *Id*. at 3, ¶ 9. Barfield also did not see any signs that suggested Plaintiff was in any pain. *Id*. at 3, ¶ 10. Although Barfield contends the "pat down search was so routine that I did not see any reason to document it with a report," he completed an incident report about the incident at Lauzon's request. *Id*. at 4, ¶ 11. Barfield notes that he has reviewed the surveillance video

13

submitted to the Court and that it "completely depicts the pat down search which I witnessed." *Id*.

at 4, ¶ 12.

Attached to Barfield's Affidavit is a copy of his incident report, which provides the

following narrative:

> Inmate Davis returned to the unit from being out at the movement
> center for notary. Ofc. Madsen conducted a pat search on the inmate
> when he returned. Inmate Davis stated that Officer Madsen pulled
> his hair during the pat search. The pat search Officer Madsen
> conducted was standard procedure from what I witnessed. While
> escorting inmate Davis back to cell 213, he stated again that the
> officer pulled his hair. I told inmate Davis that it is standard practice
> for us to check the hair during a pat search when the hair obstructs
> our view.

ECF No. 46-2 at 5.

**Defendants' Motion for Summary Judgment**

### *Failure to Exhaust*

Madsen argues that Plaintiff failed to exhaust his administrative remedies through the

Detention Center's grievance process and his claims are therefore barred. ECF No. 46 at 12–14.

In support, Madsen has provided the Piccone Affidavit[9] along with the Detention Center's Inmate

Handbook section regarding grievances, Plaintiff's acknowledgement of the Inmate Handbook,

and Plaintiff's kiosk communications regarding the incident with Madsen. ECF No. 46-4.

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his

administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides,

in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section

1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." *Id.* The

---

[9] Piccone avers that she is employed by the HCSO as the Detention Center's Compliance Officer.
ECF No. 46-4 at 2, ¶ 2.

PLRA's exhaustion requirement applies to all inmate suits about prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory and must take place before the commencement of the civil action to further the efficient administration of justice. *Id*. However, because exhaustion of administrative remedies is an affirmative defense, Defendants must produce evidence—and not Plaintiff—to demonstrate exhaustion. "[A]n inmate does not need to demonstrate exhaustion of administrative remedies in his complaint." *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017) (citations omitted). "Instead, failure-to-exhaust is an affirmative defense that the defendant must raise." *Id*.; *see also Anderson v. XYZ Corr. Health Sers., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005) (explaining an inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant); *Johnson v. Ozmint*, 567 F. Supp. 2d 806, 820 (D.S.C. 2008) ("[I]t is the Defendant who has the burden of showing that a Plaintiff failed to exhaust his or her administrative remedies."). "A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies." *Goodman v. Moose*, C/A No. 1:23-cv-00023-MR, 2024 WL 4761389, at *3 (W.D.N.C. Nov. 12, 2024) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable." *Id*. (citing *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011)); *see also Crutchfield v. Gibson*, C/A No. 7:23-cv-00427, 2025 WL 724060, at *4 (W.D. Va. Mar. 6, 2025).

Piccone summarizes the Detention Center inmate grievance process in her Affidavit as follows:

> The Detention Center has an inmate grievance process that contains a three-step review and appeal process. Step 1 is review by the relevant supervisor for the area covering the topic of the grievance. If the inmate is not satisfied by the response they receive from the

> supervisor, Step 2 is an appeal to the Detention Center's Deputy Director, Maj. Susan Safford, for further review. If an inmate is not satisfied with the response from Maj. Safford, Step 3 is a final appeal to the Director of Detention, Marcus Rhodes, or his designee. The decision of the Director of Detention or his designee is considered final, and at that point, the inmate is deemed to have exhausted their administrative remedies.

ECF No. 46-4 at 3, ¶ 7. An inmate must submit a grievance regarding an incident within 72 hours, an appeal from Step 1 to Step 2 must be done within 2 working days of receiving the Step 1 response, and an appeal from Step 2 to Step 3 must be done within 2 working days of receiving the Step 2 response. *Id*. at 4, ¶ 8. Grievance forms are located on the housing unit kiosks. *Id*. at 4, ¶ 9. The grievance process is explained to all inmates and contained in the Inmate Handbook. *Id*. at 4, ¶ 10. Plaintiff's housing unit kiosk history shows that Plaintiff acknowledged he agreed to the Inmate Handbook terms six separate times prior to submitting the February 21, 2025 grievance. *Id*. at 5, ¶ 12. According to Piccone, Plaintiff filed only "one inmate correspondence . . . regarding his claim against Ofc. Madsen: a 'Grievance/Staff/Staff-Other Grievance' filed on February 21, 2025, which sated 'Ofc[]Madsn [sic] pulled my hair back hurting my neck.'" *Id*. at 5, ¶ 13 (alterations in Piccone Affidavit). Piccone notes that Plaintiff did not complete the three-step grievance process for his February 21, 2025 grievance regarding Madsen because, although Plaintiff received a response from Lauzon on February 22, 2025, Plaintiff never completed a Step 2 or Step 3 appeal regarding the grievance. *Id*. at 5, ¶ 14.

Based on a review of the Inmate Handbook, Plaintiff's submitted grievance, Piccone's Affidavit, the allegations in the Complaint, and the parties' arguments in their respective briefs, the Court concludes that Madsen has satisfied his burden of showing that Plaintiff failed to exhaust his administrative grievances and is therefore entitled to summary judgment on this basis.

16

Plaintiff lodges numerous cursory arguments, without reference to any supporting evidence, as to whether he properly grieved his claims. Plaintiff suggests that Madsen and other Detention Center officers "manipulated" the grievance procedures, he contends that he completed the grievance process by making a "verbal" appeal, and he asserts that the Inmate Handbook "changes daily." ECF Nos. 65 at 3; 79 at 4. Plaintiff's arguments are without merit.

Plaintiff's Compliant acknowledges that the Detention Center has a grievance procedure, and Plaintiff suggests in the Complaint that the grievance files will demonstrate exhaustion. ECF No. 1 at 19–21. Plaintiff provides no basis for his argument or evidence to support his contentions neither in the Complaint nor in any of his other filings that Detention Center officers manipulated the grievance procedures. And even though Plaintiff contends he made verbal complaints, those efforts are not appropriate steps in the required grievance procedures. Plaintiff has not pointed to any competent evidence showing that he exhausted his remedies or attempted to exhaust his remedies but was prevented from doing so. On the other hand, Madsen has provided evidence showing that Plaintiff filed a grievance at Step 1 but failed to appeal that grievance through Step 2 and Step 3 of the grievance process.

Accordingly, Madsen is entitled to summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies, and the claims presented in the Complaint are therefore barred under the PLRA. *See McElrath v. Anderson Cnty. Det. Ctr.*, C/A No. 5:23-cv-133-BHH-KDW, 2023 WL 2898939, at *2 (D.S.C. Mar. 17, 2023) (dismissing complaint where pretrial detainee failed to exhaust his administrative remedies under the detention center's grievance procedures), *R&R adopted by* 2023 WL 2898620 (D.S.C. Apr. 11, 2023). Even though Plaintiff's claims against Madsen are subject to dismissal on this basis alone, the Court will also consider Madsen's remaining arguments as to the merits of Plaintiff's claims against him.

17

*Individual Capacity Claim*

Madsen argues that Plaintiff's claim for alleged excessive force fails because, even if the pat down search could constitute the application of force, the degree of force used was constitutionally permissible. ECF No. 46 at 6–9. The Court agrees.

In the Complaint, Plaintiff alleges that Madsen "did snatch my head back by the hair," which he contends constitutes excessive force in violation of the Fourteenth Amendment. ECF No. 1 at 8. According to Madsen, he "never pulled Plaintiff's hair or otherwise used any excessive force against Plaintiff." ECF No. 46-1 at 4, ¶ 13. Madsen argues that he is entitled to summary judgment because Plaintiff's claim fails under *Kingsley*, 576 U.S. 389. ECF No. 46 at 6. Madsen relies on his own Affidavit as well as the Affidavit of another eyewitness, Officer Barfield. ECF Nos. 46-1; 46-2. Both Officers submitted Incident Reports that support their version of events. *Id*. Madsen has also submitted camera footage of the incident. ECF No. 46-5 (Video Placeholder).

Upon review of all the evidence and the arguments of the parties, there is no genuine issue of material fact as to whether any use of force by Madsen was excessive. Thus, Madsen is entitled to summary judgment as to Plaintiff's excessive force claim against him.

Because Plaintiff is a pretrial detainee, his claim of excessive use of force is considered under the Fourteenth Amendment. *Kingsley*, 576 U.S. at 397 (quoting *Graham*, 490 U.S. at 395 n.10) ("the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment[.]"). The Fourteenth Amendment's due process clause protects pretrial detainees from "governmental action" that is not "rationally related to a legitimate nonpunitive governmental purpose" or that is "excessive in relation to that purpose." *Short*, 87 F.4th at 608–09.

18

To state a claim of excessive force in violation of his Fourteenth Amendment rights as a pre-trial detainee, a plaintiff may prevail upon evidence that "the use of force is deliberate – *i.e.*, purposeful or knowing." *Kingsley*, 576 U.S. at 396. Plaintiff need not detail a subjective element of his alleged assailant's subjective state of mind but "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97. Objective reasonableness turns on the "facts and circumstances of each particular case." *Id.* at 397 (quoting *Graham*, 490 U.S. at 396 (1989)). To determine if the force used was reasonable, the following factors may be considered: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397 (the "*Kingsley* factors").

The first *Kingsley* factor (i.e., the relationship between the need for the use of force and the amount of force used) weighs in favor of Madsen. The undisputed evidence recounted above establishes that Madsen conducted a pat down search of Plaintiff as he was re-entering his housing unit. "A patdown is part of the standard procedure used to check inmates for contraband before entering their housing units." *Thornley v. Flemming*, C/A No. 3:03-cv-419, 2004 WL 1348599, at *3 (E.D. Va. Mar. 25, 2004), *aff'd,* 96 F. App'x 922 (4th Cir. 2004). A pat down search of a pretrial detainee is constitutionally permissible to ensure jail safety even where the pat down involves some degree of force. *See Stanfield v. Thornton*, C/A No. JKB-cv-24-3418, 2026 WL 788071, at *3 (D. Md. Mar. 20, 2026); *Strickland v. Turner*, C/A No. 9:15-cv-0275-PMD-BM, 2018 WL 3151639, at *20 (D.S.C. Jan. 26, 2018) (noting that even an invasive pat down search may be permissible), *R&R adopted by* 2018 WL 1443953 (D.S.C. Mar. 23, 2018). Here, Madsen was

constitutionally permitted to conduct a pat down search of Plaintiff as he was re-entering his housing unit.

Plaintiff contends that Madsen pulled his hair and snatched his head back. However, Plaintiff has not identified any evidence that supports his assertions. On the other hand, all of the record evidence shows that this did not happen. Madsen testified in his Affidavit the "only actions [he] performed were those necessary to conduct the required pat down search of Plaintiff" and that he "never pulled Plaintiff's hair or otherwise used any excessive force against [him]." ECF No. 46-1 at 4, ¶ 13. Barfield testified that he "watched the entire process of Ofc. Madsen conducting a pat down search of Plaintiff and saw nothing from Ofc. Madsen that would even be remotely close to excessive force." ECF No. 46-2 at 3, ¶ 9. Barfield also testified that Plaintiff did not appear to be in any pain. *Id*. at 3, ¶ 10. The video evidence submitted does not show that Madsen pulled Plaintiff's hair or snatched his head back. ECF No. 55 (Placeholder for Video). The Incident Reports confirm the testimony of Madsen and Barfield and are consistent with the video surveillance. ECF Nos. 46-1 at 5; 46-2 at 5. There is simply no evidence in the record showing that Madsen pulled Plaintiff's hair at any time or snatched his head back. Instead, the evidence shows only that Madsen conducted a pat down search of Plaintiff.

The Court finds the video surveillance significant in that is clearly contradicts Plaintiff's assertions.[10] "Although the Court must draw all reasonable inferences to favor the nonmoving

---

[10] "In cases involving inconsistent witness testimony, unchallenged video evidence allows a court to accept the facts portrayed in the video for purposes of ruling on a motion for summary judgment." *Thrower v. Kinnee*, C/A No. 0:14-cv-2791-JMC-PJG, 2015 WL 2338072, at *4 (D.S.C. Apr. 13, 2015); *see also Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (stating that when a video "quite clearly contradicts" a version of the story so that "no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) ("[W]here, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the

party, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Est. of Taylor v. Baltimore Cnty.*, C/A No. RDB-22-cv-2459, 2025 WL 385774, at *6 (D. Md. Feb. 3, 2025) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Thus, at the summary judgment stage, video evidence can only discredit a nonmovant's factual assertions if the video 'blatantly' contradicts the nonmovant's position." *Simmons v. Whitaker*, 106 F.4th 379, 385 (4th Cir. 2024) (quoting *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008)). Here, the surveillance video corroborates Madsen's version of events and blatantly contradicts Plaintiff's assertions.

Based on a review of the entire record before the Court, there is no evidence to support Plaintiff's bare assertion in the Complaint that Madsen pulled his hair or snatch his head back. Thus, the first *Kingsley* factor cuts strongly against Plaintiff's excessive force claim.

The second *Kingsley* factor (i.e., the extent of Plaintiff's injury) similarly supports summary judgment for Madsen. Although Plaintiff alleges that he had a pre-existing neck and back injury that Madsen allegedly aggravated, there is no evidence to support Plaintiff's contention that he sustained any injury as the result of the pat down search. Plaintiff's cursory assertions that Madsen caused injury by snatching his head back is wholly unsupported by the record. *Jones v. Buchanan*, 325 F.3d 520, 527–28 (4th Cir. 2003) ("[T]he extent of the plaintiff's injuries is also a relevant consideration."); *see also Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *Pressley v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987). There is no medical evidence before the Court regarding a severe or debilitating wound, the need for surgery, any long-term or lasting injury, or

---

videotape."). In this case, the video "clearly contradicts" any assertion that Madsen pulled Plaintiff's hair or snatched his head back.

any treatment. *Hendricks v. Greenville Cnty.*, C/A No. 6:24-cv-03587-JDA-WSB, 2026 WL 228887, at *7 (D.S.C. Jan. 9, 2026) (collecting cases noting that absence of injury counters against finding of excessive force), *R&R adopted by* 2026 WL 228002 (D.S.C. Jan. 28, 2026). Therefore, this factor cuts against Plaintiff's excessive force claim. *See Berry v. Hershberger*, C/A No. 14-cv-3145, 2015 WL 4615949, at *7 (D. Md. Jul. 30, 2015) ("The absence of any significant injury in this case is strong evidence that the force used did not exceed that which was necessary to satisfy that concern."). Plaintiff has not provided any evidence showing he suffered an injury as a result of any use of force against him.

The third *Kingsley* factor (i.e., any effort to temper/limit the amount of force used) also tilts in Madsen's favor. Specifically, as noted, a pat down search is constitutionally permitted and there is no evidence that Madsen exceeded the limits of a typical pat down search. As such, the third factor weighs against Plaintiff's excessive force claim.

The fourth and fifth *Kingsley* factors (i.e., the severity of the security problem at issue and the threat reasonably perceived by Madsen) also fall on Madsen's side of the ledger. Again as noted, courts have uniformly recognized that pat down searches like the one that occurred in this case are permitted and expected to ensure institutional safety.

For the sixth *Kingsley* factor (i.e., whether Plaintiff actively resisted), there is no evidence that Plaintiff actively resisted the pat down search. However, the use of force was measured and this factor is at least neutral.

Here, Madsen's actions in conducting the pat down and "use of force" in that pat down was objectively reasonable, and he is therefore entitled to summary judgment. The *Kingsley* factors weigh in his favor. It is undisputed that Plaintiff was subjected to a pat down search as he was re-entering his housing unit, which is a routine and justified security protocol. The record evidence

22

does not support Plaintiff's contention that Madsen pulled his hair or snatched his head back. The evidence does not show any injury to Plaintiff. The video evidence provided does not show Madsen engaging in any use of force against Plaintiff, other than to conduct a pat down search. In light of all the foregoing, the record establishes that Madsen conducted a search to prevent a serious security risk, "and the application of force was limited, measured and reasonable under the circumstances." *Wilson v. O'Bryant*, C/A No. 3:22-cv-556-DJN, 2024 WL 1683613, at *7 (E.D. Va. Apr. 18, 2024). "The undisputed evidence indicates that [Madsen's] use of force was related to a legitimate nonpunitive interest in regaining order, and that the force applied was objectively reasonable in the circumstances." *King v. Dickerson*, C/A No. 1:23-cv-00730, 2025 WL 2306235, at *9 (M.D.N.C. Aug. 11, 2025). Thus, Plaintiff has failed to establish that Madsen used excessive force against him in violation of the Fourteenth Amendment.

### Qualified Immunity

Qualified immunity shields government officials from liability unless "the official violated a statutory or constitutional right" and "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established when "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741 (quotations and brackets omitted). Thus, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id*. at 743. In this case, Plaintiff has not established a constitutional violation under the Fourteenth Amendment, nor has he established that every reasonable official would have understood that Madsen's actions violated a constitutional right. Thus, Madsen is entitled to qualified immunity.

23

### *Official Capacity Claim*

Plaintiff's claims against Madsen in his official capacity should be dismissed. *See Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the State itself . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." (citations omitted)); *see also Bowers v. Rector & Visitors of Univ. of VA*, C/A No. 3:06-cv-00041, 2007 WL 853815, at *6 (W.D. Va. Mar. 16, 2007).

Madsen is an employee of the HCSO. ECF No. 46-1 at 2, ¶ 2. Plaintiff's § 1983 claim against Madsen in his official capacity is treated as an action against the HCSO, which operates the Detention Center. *Pickett v. Thompson*, C/A No. 9:09-cv-2986-MBS, 2010 WL 3786569, at *1 (D.S.C. Sept. 21, 2010) (explaining HCSO operates the Detention Center); *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985). Thus, for liability to attach, Plaintiff must show a violation of his constitutional rights that was caused by either (1) a municipal policy, practice or custom, or (2) the municipality's failure to train its employees. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). An official capacity claim under § 1983 fails as a matter of law where there is no underlying constitutional violation. *See Hinkle v. City of Clarksburg,* 81 F.3d 416, 420–21 (4th Cir. 1996). As discussed above, the undisputed facts demonstrate that Plaintiff has failed to show he suffered a constitutional violation. Further, Madsen is immune from suit under the Eleventh Amendment in his official capacity as a matter of law. *Staley v. Graziano*, C/A No. 5:21-cv-4183-MGL-KDW, 2023 WL 3855374, at *4 (D.S.C. May 8, 2023), *R&R adopted by* 2023 WL 3735244 (D.S.C. May 31, 2023). Madsen's Motion for Summary Judgment as to Plaintiff's official capacity claim should therefore be granted.

24

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion for

Summary Judgment (ECF No. 46) be **GRANTED**.

**IT IS SO RECOMMENDED**.

s/William S. Brown

United States Magistrate Judge

April 8, 2026
Greenville, South Carolina

*The parties' attention is directed to the important notice on the next page.*

25

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

26